UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JONATHAN SCOTT WILLIAMSON | * | CIVIL ACTION NO.  12-2277 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| PREMIER TUGS, LLC, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment [doc. # 85] filed by third-party plaintiff New Tech Global Ventures, LLC ("New Tech") and a cross-request/motion for summary judgment [doc. # 94] filed by third-party defendant, Caillou Island Towing Company, Inc. ("Caillou Island").  For reasons explained below, it is recommended that New Tech's motion [doc. # 85] be denied, but that Caillou Island's cross-request/motion [doc. # 94] be GRANTED.

Background

On August 29, 2012, Jonathan Scott Williamson filed the instant complaint under the Jones Act, 46 U.S.C. § 30104, and the general maritime law against his employer Premier Tugs, LLC ("Premier").  Williamson seeks maintenance and cure, plus damages following a May 7, 2012, slip and fall accident that he sustained while in the process of securing two barges together during his tenure as a deckhand aboard the tugboat M/V MISS CAROLYN.

On June 14, 2013, Williamson amended his complaint to join Central Boat Rentals, Inc. – the owner of the drilling barge where the slip and fall accident occurred.  (1st Suppl. & Amend. Compl.  [doc. # 16]).  On joint motion of the parties, however, the court dismissed Central Boat

Rentals, Inc. on January 13, 2014.  [doc. #s 27 & 28].

On February 5, 2014, Williamson again amended his complaint to join Workover

Specialties, LLC ("Workover") –  the operator of the drilling barge where his accident occurred.

(2nd Suppl. & Amend. Compl.  [doc. # 31]).[1]  On May 13, 2014, Workover filed its answer,

together with a third-party demand against New Tech.  (Workover 3rd Party Demand [doc. #

34]).  Workover alleged that the barge where plaintiff's accident occurred was chartered by

Apache Corporation ("Apache") from Caillou Island.  *Id*., ¶ VI.  Apache, in turn, contracted with

New Tech to provide a consultant on location to supervise and oversee the operations.  *Id*., ¶ VII.

Workover further alleged that any injuries or damages sustained by Williamson were caused by

the fault of New Tech.  *Id*., ¶ IX.  Workover seeks judgment against New Tech for full indemnity

and contribution, plus all costs, expenses, and attorney's fees incurred.  *Id*., ¶ X, prayer.

In the wake of Workover's third-party demand, Williamson filed a third amended

complaint on June 6, 2014, to join New Tech as a defendant.  (3rd Suppl. & Amend. Compl. [doc.

# 40]).  Williamson alleged, *inter alia*, that Apache had contracted with New Tech to provide a

consultant on location to supervise and oversee the operations being performed.  *Id*., ¶ 5.

Williamson further alleged that his "injuries were caused by the negligence and fault of Premier [

], Workover [ ] and New Tech [ ] and their employee's [sic] and the unseaworthiness of the

vessels . . ."  *Id*., ¶ 9.

On October 30, 2014, Williamson filed his fourth (and latest) amended complaint which

added Apache as a defendant.  (4th Suppl. & Amend. Compl. [doc. # 52]).  Williamson explained

---

[1]  Williamson explained that the accident occurred when he stepped onto the drilling
barge to secure the lines from the pipe barge to the drilling barge.  *Id*., ¶ 6.  His right foot slipped
in a pool of oil located near one of the three pumps being used by Workover to pump water out
of the drilling barge.  *Id*.  As plaintiff's right foot slipped out from under him he fell forward and
landed in an open man hole on the drilling barge.  *Id*.

that

> [a]t the time of the injury Plaintiff's job was to tie off and/or secure a pipe barge
> to a keyway barge containing a drilling rig.  The keyway barge was chartered by
> Apache Corporation from Caillou Island Towing, Inc.  The truck rig mounted on
> the keyway barge was owned by the drilling contractor, Workover Specialties,
> LLC.  Apache Corporation had also contracted with New Tech to provide a
> consultant and/or "company man" on location to supervise and oversee the
> operations being preformed [sic] by Workover Specialties, LLC.

*Id.*, ¶ 5.

He clarified that his "injuries were caused by the negligence and fault of Premier [ ], Workover [ ], New Tech [ ], and Apache [ ] and their employee's [sic] and borrowed servant, Amos W. Moore, as well as the unseaworthiness of the keyway drilling barge . . ."  *Id.*, ¶ 9.  He added that, during the relevant period, Amos W. "Buddy" Moore was the borrowed servant of Apache Corporation.  *Id.*, ¶ 10.

On November 3, 2014, Premier filed a cross-claim against Workover, New Tech, and Apache (on the basis of Williamson's allegations against said defendants) for reimbursement and/or indemnity for the maintenance and cure payments already paid to Williamson or that may become due.  (Nov. 3, 2014, Cross-claim [doc. # 56]).

On May 19, 2015, Workover filed a cross-claim for indemnity against Premier.  (Cross-Claim [doc. # 76]). Two days later, New Tech filed a third-party complaint and complaint for declaratory judgment against Caillou Island and Caillou Island's unknown insurers ABC and DEF Insurance Companies.  (3rd Party & Decl. Judg. Compl. [doc. # 79]).  New Tech asserted that because Williamson alleged in his complaint that New Tech was vicariously liable for the actions of Amos "Buddy" W. Moore (even though as is it now turns out, New Tech was not responsible for Moore's actions as an independent contractor), this made New Tech an "invitee" of Apache under the terms of the Master Charter Agreement between Apache and Caillou Island, thus entitling New Tech to defense and indemnity from Caillou Island, along with additional

insured status from Caillou's insurers.  *Id.*[2]

On August 7, 2015, New Tech filed the instant motion for summary judgment against Caillou Island to compel Caillou Island and/or its insurers to defend and indemnify New Tech from all claims in the lawsuit.  On August 27, 2015, Caillou Island filed its opposition to New Tech's motion, at the conclusion of which, it asked the court to enter summary judgment in its own favor.  (Opp. Memo., pg. 21).  New Tech filed a reply on September 10, 2015.  Caillou Island filed a sur-reply on September 17, 2015.  Accordingly, the matter is ripe.

**Discussion**

**I.      Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by

---

[2]  On September 25, 2015, New Tech amended its third-party complaint to substitute Osprey Underwriting Agency, Ltd., in lieu of the unknown insurers.  (1st Amend. 3rd Party & Decl. Judg. Compl. [doc. # 110]).

pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Finally, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In other words, summary judgment is warranted if no reasonable juror could return a verdict in favor of the non-movant.

*See Anderson*, 477 U.S. at 252 (citation omitted).

**II.    Analysis**

New Tech derives its claim for defense and/or indemnity against Caillou Island from a

July 16, 2002, Master Time Charter Agreement ("MCA") entered into between Apache as

"Charterer" and Caillou Island as "Owner."  (MCA; New Tech MSJ, Exh. 1).  The MCA

provides that

> 12. Owner's Indemnities. Neither charterer, its officers, employees, nor the underwriters of any of the foregoing shall have any of the responsibility or liability for any claim involving damage to or loss of the vessel or any of owner's equipment, or for any injury, illness, disease, or death of employees of owner, its subcontractors, or their employees or agents, and **owner shall defend, indemnify, and hold harmless charterer, its** parent, subsidiary and affiliated companies and their officers, directors, employees, in-house legal counsel, agents, representatives, **invitees**, co-lessees, co-owners, partners, joint venturers, and each of their respective successors, spouses, relatives, dependents, heirs and estates, and the underwriters of each of the foregoing from and **against any such claim**, **whether groundless or not**, and whether caused in whole or in part by the negligence or faults of indemnitees, or by the equipment of charterer, charterer's property or charterer's subcontractors' property.  It is expressly understood that owner shall insure its obligations assumed under this paragraph.

(MCA, ¶ 12) (emphasis added).[3]

Succinctly stated, New Tech contends that it is an "invitee" of Apache under the MCA entitled

to defense and indemnity from Caillou Island.

Before proceeding further, the undersigned notes that both sides agree, and the court so

finds, that the MCA is a maritime contract.  *Angelina Cas. Co. v. Exxon Corp., U.S.A.*, 876 F.2d

40, 41 (5th Cir. 1989) (ship charter is unquestionably a maritime contract).  Further, "[a]n

indemnity clause and a maritime contract are interpreted according to federal maritime, rather

than state, law."  *Lirette v. Popich Bros. Water Transp.*, 699 F.2d 725, 728 n.11 (5th Cir. 1983)

---

[3]  For ease of reading, the court has omitted the universal bolding and capitalization employed in the original document.

(citations omitted); *see also Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015) (because the MSA and relevant work orders are directly linked to a vessel involved in a maritime activity, general maritime law governs interpretation of the agreements).[4]

"[I]n a maritime contract, words of indemnification are given their plain meaning unless the provision is ambiguous." *Id*. (citations omitted). Furthermore,

> [a maritime] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

*Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981) (Unit A).

In fact, the Fifth Circuit has recognized that indemnity agreements are to be strictly construed. *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986). In addition, under federal maritime law, the court cannot look beyond the written language of the document to determine the parties' intent unless the disputed contract provision is ambiguous. *Corbitt*, 654 F.2d at 332-333. Although courts typically employ federal common law to resolve maritime disputes, state law may be used to supplement maritime law where the latter is silent or a local matter is at issue. *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir. 1986); *see also Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991).

In this case, the MCA does not define "invitee." Thus, the court must consult extra-contractual sources. Citing Louisiana law, the Fifth Circuit has defined an "invitee" as a "person who **goes onto premises** with the expressed or implied invitation of the occupant, on business of

---

[4] The MCA also specifies that it shall be "construed in accordance with the admiralty and maritime laws of the United States of America." (MCA, ¶ 27). Admiralty courts generally give effect to the parties' choice of law election. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 243 (5th Cir. 2009) (citation omitted).

the occupant or for their mutual advantage." *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 894

(5th Cir. 1985) (emphasis added).[5]

Here, New Tech concedes that its only presence or connection to the Well Site (or

accident site) is through Amos "Buddy" Moore ("Moore").  (New Tech MSJ Memo., pg. 11

[doc. # 85]).  The difficulty, of course, is that the court recently adopted New Tech's

representations and arguments, as  urged in a separate, unopposed motion for summary

judgment, that Moore was *not* its employee; rather, he was an independent contractor employed

by NYX Consulting, Inc.  *See* New Tech MSJ [doc. # 86]; Oct. 5, 2015, Mem. Ruling and

Judgment [doc. #s 115-116] (dismissing Williamson's claims against New Tech).

To avoid the apparent evisceration of its claim for "invitee" status wrought by the formal

severing of the non-existent master/servant relation relationship between itself and Moore, New

Tech contends that its invitee status under the MCA should be governed by the allegations in

Williamson's amended complaint(s).  Assuming, without deciding, that Williamson's third

and/or fourth amended complaints alleged sufficient *facts* to hold New Tech vicariously liable

for the actions of Moore,[6] the court is not persuaded that the parties to the MCA reasonably

intended to defend and indemnify additional, otherwise non-covered parties, based merely on an

injured worker's pleading allegations, which ultimately everyone agrees were groundless.

New Tech's argument relies heavily on decisions that address an *insurer*'s duty to defend

under Louisiana and Texas law.  *See e.g.*, *Tower Nat. Ins. Co. v. Dixie Motors*, Civ. Action No.

14-1634, 2015 WL 2452336, at *2 (E.D. La. May 21, 2015) (citing *inter alia*, *W. Heritage Ins.

Co. v. River Entm't,* 998 F.2d 311, 312–13 (5th Cir.1993)).  For instance, in *Tower Nat. Ins., Co.*,

---

[5] In *Brown v. Sea Mar Mgmt., LLC*, the Fifth Circuit applied the *Blanks* invitee definition in a maritime case.  *Brown v. Sea Mar Mgmt., LLC*, 288 F. App'x 922, 925 (5th Cir. 2008).

[6] Caillou Island does not argue to the contrary.

the court recognized that

> [u]nder Louisiana law, an **insurer's** duty to defend is broader than its duty to indemnify. Because the duty to defend does not depend on the outcome of the underlying law suit but rather upon the allegations in the pleadings, a duty to defend claim is ripe, and presents an actual case or controversy when the underlying suit is filed.

*Tower Nat. Ins. Co., supra* (emphasis added).[7]

Along these lines, the Fifth Circuit observed in *Sullen v. Missouri Pacific R. Co.*, that,

> Louisiana law is definite and certain. Whether a party is obliged to tender a defense to another party depends entirely upon the allegations in the precipitating pleadings.  In determining whether an indemnitor or an insurer is obligated to defend an indemnitee or insured under the terms of an indemnity or insurance contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions; the ultimate outcome of the case has no effect upon the duty to defend.

*Sullen v. Missouri Pac. R. Co.*, 750 F.2d 428, 433 (5th Cir. 1985) (internal citations omitted).

A little over two years later, however, in response to questions certified by the Fifth Circuit, the Louisiana Supreme Court explicitly distinguished indemnity agreements from liability insurance policies.  *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).  The court explained that

> [a] cause of action under a liability insurance policy accrues when the liability attaches.  However, an insurer's duty to defend arises whenever the pleadings against the insured disclose a possibility of liability under the policy.  On the other hand, an indemnity agreement does not render the indemnitor liable until the indemnitee actually makes payment or sustains loss. Therefore, a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. **The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay. Rather, it is the terms of the indemnity agreement which govern the obligations of the parties**.

---

[7]  Similarly, in *W. Heritage Ins. Co. v. River Entm't*, the Fifth Circuit noted that under the "Texas complaint allegation rule," an "**insurer**'s duty to defend is determined only by reference to the petition and the policy's provisions." *W. Heritage Ins. Co. v. River Entm't, supra* (emphasis added).

*Id*.  (internal citations omitted) (emphasis added).[8]

Similarly, in the maritime context, the Fifth Circuit has recognized that the general rule of

indemnity is that a cause of action does not arise until *after* liability has been established.

*Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 733 (5th Cir. 1983).

New Tech argues that in addition to the duty to defend that is a component of indemnity

itself,[9] Caillou Island separately obligated itself to a broader duty when it agreed to "*defend*,

indemnify, and hold harmless . . ."  *See* MCA (emphasis added).  In other words, the specified

obligation to "defend" would be superfluous if were not distinct from the duty to defend inherent

in indemnity.[10]  Louisiana law, however, provides that, absent a specific agreement to defend or

reimburse the indemnitee for attorney's fees, the costs of defense are *not* included in an

obligation to indemnify.  *Perry v. Chevron U.S.A., Inc.*, 887 F.2d 624, 630 (5th Cir. 1989).

Thus, the parties here likely inserted the duty to "defend" along with the obligations to

"indemnify and hold harmless" in an abundance of caution to ensure that the costs of defense

were, in fact, recoverable – in the event that Louisiana law applied, e.g., pursuant to the Outer

Continental Shelf Lands Act.

The foregoing interpretation is consistent with a recent decision by Judge Barbier in

which he observed that,

---

[8]  In the wake of *Meloy*, it is clear that *Sullen* no longer mirrors Louisiana's approach to an **indemnitor's** duty to defend.

[9]  *See Lirette, supra* (duty to indemnify and hold harmless includes costs and attorney's fees); *Cormier v. Rowan Drilling Co.*, 549 F.2d 963, 971 (5th Cir. 1977) (if indemnity exists, the indemnitee is entitled to indemnification for attorney's fees and costs).

[10]  Under general maritime law, a court should interpret, "to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous. *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015) (citation omitted).

> [w]hile a contract certainly could express that the duty to defend is broader than indemnity, such intent is not expressed here. [The indemnity provision] lists the duty to defend in the same sentence as the duty to indemnify. This reflects that the duties to defend and indemnify are to be treated identically. Because these duties are co-extensive, and the extent to which [the indemnitee] is owed indemnity is not entirely clear at the moment, the scope of the duty to defend also cannot be determined now. Accordingly, [the indemnitor]'s duty to defend only requires it to reimburse [the indemnitee's] defense costs after there has been judicial determination on the merits.

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 841 F. Supp. 2d 988, 1009 (E.D. La. 2012).

This analysis applies with equal force here.

The undersigned further notes that the MCA specifies that the obligation to defend, indemnify, and hold harmless attaches to any claim brought by a relation of Caillou Island **"whether groundless or not** . . ."  *See* MCA (emphasis added).  This language does not change the equation.

In a case apparently applying Louisiana law, the Fifth Circuit held that for purposes of determining whether a third-party beneficiary[11] is entitled to coverage under an insurance policy, the court may look beyond the allegations of the complaint to ascertain whether the third-party was an additional insured.  *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 964 (5th Cir. 1994). The Fifth Circuit's resolution of this issue is consistent with a decision issued by Judge Skelly Wright some 40 years earlier:

> [i]t is true that in Louisiana, as elsewhere, the obligation to provide a defense for an assured is determined by the allegations of the petition or complaint, irrespective of the fact that the suit may be entirely groundless. But before that principle applies, it must be shown that the defendant in the personal injury action is in fact an assured, named or omnibus, under the policy. **Obviously, the**

---

[11] New Tech is a third-party beneficiary under the MCA. Federal maritime law recognizes the validity of the third party beneficiary theory of contracts as set forth in the Restatement of Contracts.  *Sicard v. Island Operating Co.*, Civ. Action No. 05-3022, 2007 WL 609770, at *3 n.3 (E.D. La. Feb. 21, 2007) (citation omitted).

> **insurer's obligation is not to provide a defense for a stranger merely because the plaintiff alleges that the strange defendant is an assured or alleges facts which, if true, would make him so.** Conversely, the insurer may not renege on its obligation to provide a defense, even for an omnibus insured, merely because the allegations in the complaint are groundless. For example, where a person is driving the named insured's car with his permission, the permittee is an omnibus assured under the policy and the insurer owes him a defense when sued even though the charge of negligence against him cannot be proved. On the other hand, if permission was not granted for the use of the car, the user thereof is not entitled to a defense under the policy irrespective of proof of negligence. **In short, allegations in the plaintiff's petition cannot create an obligation on the part of the insurer to defend where none previously existed.** Unless [the permittee] is shown to be an assured under the policy, named or omnibus, no obligation whatever as to him arises, either as a party to the insurance contract or as the beneficiary of a stipulation therein pour autrui.

*Butler v. Maryland Cas. Co.*, 147 F. Supp. 391, 395 (E.D. La. 1956) (citations omitted) (emphasis added).[12]

Clearly, if the allegations in a precipitating petition cannot confer additional assured status upon a third–party beneficiary under an *insurance* policy that ordinarily is broadly construed in favor of coverage,[13] then *a fortiori* the unsubstantiated allegations by a non-party to an *indemnity* agreement, which is to be strictly interpreted, cannot support expansion of the list of covered indemnitees to include third-parties that the undisputed facts establish were not beneficiaries entitled to protection under the agreement.

### Conclusion

In sum, there is no cognizable basis to find that the parties to the MCA reasonably

---

[12]  The Fifth Circuit reached a similar result apparently under Texas or Oklahoma law.  *S. Underwriters v. Dunn*, 96 F.2d 224, 226 (5th Cir. 1938).  Other courts have taken the same approach.  *See Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. Dist. Ct. App. 1989); *Robert Glenn v. Nat'l Indem. Co., et al.*, 1983 WL 320107, at *3 (Del. Com. Pl. May 4, 1983).

[13]  For purposes of the duty to defend under an *insurance policy*, the Louisiana Supreme Court has since held that additional assured status is determined from the allegations of the complaint.  *Am. Home Assur. Co. v. Czarniecki*, 255 La. 251, 269, 230 So. 2d 253, 259 (La. 1969).

intended to extend defense and/or indemnity to New Tech under the instant facts.  Thus, the

undersigned finds that there is no genuine dispute as to any material fact and that Caillou Island

is entitled to judgment as a matter of law dismissing New Tech's claim against it.  Fed.R.Civ.P.

56; *Jensen v. Snellings*  841 F.2d 600, 618 (5th Cir. 1988) (court may grant summary judgment

for nonmoving party even though it made no formal cross-motion).[14]

For these reasons,

IT IS RECOMMENDED that New Tech's motion for summary judgment [doc. # 85] be

DENIED.

IT IS FURTHER RECOMMENDED that Caillou Island's cross-request/motion for

summary judgment [doc. # 94] be GRANTED, and that New Tech's third-party demand and

complaint for declaratory relief against Caillou Island (only), as amended [doc. # 110], be

dismissed, with prejudice.  Fed.R.Civ.P. 56.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

have **fourteen (14) days** from service of this Report and Recommendation to file specific,

written objections with the Clerk of Court.  A party may respond to another party's objections

within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any

objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing.  Timely objections will be considered by the District Judge before he makes a

final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[14] Caillou Island's insurer(s) has yet to appear in this matter.  Thus, it is premature to decide whether New Tech is entitled to defense under any of Caillou Island's insurance policies.

13

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

    In Chambers, at Monroe, Louisiana, this 13th day of October 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE