UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JONATHAN SCOTT WILLIAMSON** | * | **CIVIL ACTION NO.  12-2277** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **PREMIER TUGS, LLC, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions:  1) a motion for partial summary judgment [doc. 82] filed by cross-claim defendant Premier Tugs, LLC ("Premier") seeking dismissal of Workover Specialties, LLC's ("Workover"); and 2) a motion for summary judgment [doc. # 84] filed by cross-claimant Workover seeking an order requiring cross-defendant, Premier, to provide it with defense and indemnity, including attorney fees.  For reasons explained below, it is recommended that Premier's motion [doc. # 82] be GRANTED and that Workover's motion [doc. # 84] be DENIED.

Background

On August 29, 2012, Jonathan Scott Williamson filed the instant complaint under the Jones Act, 46 U.S.C. § 30104, and the general maritime law against his employer Premier, seeking maintenance and cure, plus damages, following a May 7, 2012, slip and fall accident that he sustained while in the process of securing two barges together during his tenure as a deckhand aboard the tugboat M/V MISS CAROLYN.

On February 5, 2014, Williamson amended his complaint to join Workover –  the

operator of the drilling barge where his accident occurred. (2nd Suppl. & Amend. Compl. [doc. # 31]).[1]

On May 13, 2014, Workover filed its answer, together with a third-party demand against New Tech Ventures, LLC ("New Tech"). (Workover 3rd Party Demand [doc. # 34]). Workover alleged that the barge where plaintiff's accident occurred was chartered by Apache Corporation ("Apache") from Caillou Island Towing Co., Inc. ("Caillou Island"). *Id*., ¶ VI. Apache, in turn, contracted with New Tech to provide a consultant on location to supervise and oversee the operations. *Id*., ¶ VII. Workover further alleged that any injuries or damages sustained by Williamson were caused by the fault of New Tech. *Id*., ¶ IX. Accordingly, Workover seeks judgment against New Tech for full indemnity and contribution, plus all costs, expenses, and attorney's fees incurred. *Id*., ¶ X, prayer.

On October 30, 2014, Williamson filed his fourth (and latest) amended complaint which added Apache as a defendant. (4th Suppl. & Amend. Compl. [doc. # 52]). Williamson alleged that

> [a]t the time of the injury Plaintiff's job was to tie off and/or secure a pipe barge to a keyway barge containing a drilling rig. The keyway barge was chartered by Apache Corporation from Caillou Island Towing, Inc. The truck rig mounted on the keyway barge was owned by the drilling contractor, Workover Specialties, LLC. Apache Corporation had also contracted with New Tech to provide a consultant and/or "company man" on location to supervise and oversee the operations being preformed [sic] by Workover Specialties, LLC.

*Id.*, ¶ 5.

On November 3, 2014, Premier filed a cross-claim against Workover, New Tech, and

---

[1] Williamson explained that the accident occurred when he stepped onto the drilling barge to secure the lines from the pipe barge to the drilling barge. *Id*., ¶ 6. His right foot slipped in a pool of oil located near one of the three pumps being used by Workover to pump water out of the drilling barge. *Id*. As plaintiff's right foot slipped out from under him he fell forward and landed in an open man hole on the drilling barge. *Id*.

2

Apache (on the basis of Williamson's allegations against said defendants) for reimbursement and/or indemnity for the maintenance and cure payments already paid to Williamson or that may become due in the future. (Nov. 3, 2014, Cross-claim [doc. # 56]).

On May 19, 2015, Workover filed a cross-claim for indemnity against Premier. (Cross-Claim [doc. # 76]). In support of its claim Workover alleged that

5.

> At the time of the alleged damages to plaintiff, PREMIER TUGS had provided the M/V MISS CAROLYN, together with its crew, to CAILLOU ISLAND TOWING COMPANY, INC. (hereinafter referred to as "CAILLOU ISLAND"), who in turn, chartered said vessel to APACHE CORPORATION, pursuant to a Master Time Charter Agreement between CAILLOU ISLAND and APACHE. Pursuant to the terms and conditions of the Master Time Charter Agreement, CAILLOU ISLAND agreed to "[12] . . . defend, indemnify and hold harmless Charterer [APACHE] . . . and . . . their invitees [WORKOVER] from any injury of its employees." Williamson was an employee of PREMIER; WORKOVER, an invitee of APACHE, has made a claim against APACHE for defense and indemnity pursuant to a Master Service Contract between APACHE and WORKOVER dated May 23, 2005.

6.

> The agreement between Caillou Island and Premier, to broker/charter the M/V MISS CAROLYN and her crew, can be found in the Certificate of Insurance executed on behalf of Premier and in favor of CAILLOU ISLAND by PREMIER's insurance agent. This Certificate is commonly referred to as a "Long Form Certificate." It is signed by PREMIER's insurance agent with the "expressed authority granted by underwriters," and is dated March 30, 2012. The form indicates that it is a supplement to the Accord 25 Form.

*Id*.

On August 5, 2015, Premier filed the instant motion for partial summary judgment against Workover seeking dismissal of Workover's cross-claim against Premier. On August 6, 2015, Workover filed the instant (effectively, cross-) motion for summary judgment to obtain an order requiring Premier to provide it with defense and indemnity, including reimbursement of

3

reasonable attorney's fees expended to date. Over the next month, the parties filed various opposition and reply memoranda. *See e.g.*, doc. #s 95, 97, 100, & 102. The matter is ripe.

## Discussion

### I. Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an

actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Finally, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In other words, summary judgment is warranted if no reasonable juror could return a verdict in favor of the non-movant. *See Anderson*, 477 U.S. at 252 (citation omitted).

**II.     Analysis**

Workover derives its claim for defense and/or indemnity against Premier from a "Certificate of Insurance" (hereinafter, "COI") issued to Caillou Island and signed on March 30, 2012, by Danelle Heathman[2] on behalf of Marsh USA, Inc., as agent "acting With Express

---

[2] Upon close inspection, it is apparent that Danelle Heathman is the signatory.

Authority Granted By Underwriters . . ." (COI; Workover MSJ, Exh. F-2 [doc. # 84]).[3] Near the top of the document, the COI specifies that "ALL QUESTIONS/BLANKS MUST BE COMPLETED." *Id*. The two-page document also emphasizes that "*[t]his certificate of insurance neither affirmatively nor negatively amends, extends or alters the coverage provided by the referenced insurance policy, nor does it confer any new or additional contractual rights to the certificate holder other than those conveyed by the policy. The terms of policy control*." *Id*.

Immediately beneath the foregoing disclaimer, the COI clearly explains that "this is to certify that the policies of insurance described below have been issued to the named insured shown below are in full force at this time." *Id*. The named insured is listed as Premier. *Id*. The covered vessels are listed as the MISS MICHELLE, the MISS CAROLYN, and the MR. LANDON. *Id*. The COI then lists four types of coverage, the respective coverage periods, the policy numbers, the insurance companies, the limits of liability, deductibles, and navigation limits. *Id*.

The document also includes a "SPECIAL ENDORSEMENT" that incorporates word for word a provision from the Endorsement section of the underlying Hull & Machinery Protection and Indemnity Policy issued to Premier one week earlier on March 23, 2012. *See* Workover Opp. Memo., Exh. A [doc. # 95]. It states that,

> [p]ermission is hereby granted to charter vessel(s) to or to broker vessels through Caillou Island Towing Company, Inc. and/or any of its subsidiaries or affiliated companies; and for operations during the period of any such brokerage or charter, either oral or in writing: (a) Caillou Island Towing Company, Inc., any of its subsidiaries or affiliates and/or any corporation, partnership, or individual

---

[3] In support of its motion for partial summary judgment, Premier adduced a certificate of insurance issued by Schwing Insurance Agency, Inc., for coverage periods not at issue in this case. (Premier MPSJ, Exh. A). Both sides agree that the COI adduced by Workover is the correct document.

>operating and/or working the vessel(s), and/or anyone for whom the vessel(s) is/are working or being operated (hereinafter "Caillou Island"), shall be considered as additional insureds under all coverage provided by the policies referenced above, and the underwriters' rights of subrogation against the additional insured are hereby waived; and (b) contractual liability shall be afforded Caillou Island under this endorsement, which shall be deemed a written contract, providing defense and indemnity to Caillou Island for any claims brought by or on behalf the vessel's owners, employees, invitees, or crew for sickness, disease, personal injury or death, arising out of, directly or indirectly, the charter or brokerage of the vessel regardless if caused or contributed to by the sole or concurrent fault, negligence, or strict liability of Caillou Island.
>
>The coverage afforded to such additional assureds under all coverages provided by these policies shall be in all respects and in all events identical with the coverage afforded to the owner of the vessel(s) and any limitation of coverage as to loss, damage, or expense, "as owner" and "other than as owner" or any other provision herein inconsistent with the coverage of such additional insureds, identically with owner's coverage shall, as to such additional insureds, be deemed deleted.
>
>It is expressly agreed that the insurance afforded by these policies shall be deemed to be primary of all other insurance, and any "other insurance clause" contained in this policy is hereby deleted. In the event of cancellation or material change in this policy, underwriters will endeavor to give **30 days prior notice Caillou Island. All notices to Caillou Island should be addressed to P.O. Drawer 2568, Houma, LA 70361. ** Except in the event of non-payment in which 10 days will be given.

*Id*.

Page two of the COI asks approximately 20 yes or no questions concerning insurance coverage. *Id*. At the bottom of the page, in a space for comments, is typewritten: "[t]his is a supplement to the Acord 25 Form." *Id*.

In a bold attempt at legal alchemy, supported by no less than 80 pages of smoke and mirrors masquerading as argument, Workover endeavors to transform a document plainly described, and actually serving as a certificate of insurance, into a defense and indemnity obligation/contract undertaken by Premier in favor of Caillou Island, and its customers, i.e.,

ostensibly Workover (collectively, "Caillou Island").[4] Politely stated, Workover's wishful argument and incantations, no matter how vociferously urged and repeated, do not succeed in metamorphosing the certificate into an indemnity agreement.[5]

The undersigned emphasizes that a "certificate of insurance is not an insurance contract, but represents to another the issuance and existence of a policy." *Udeobong v. Sec'y of Health & Human Servs.*, Civ. Action No. 06-3197, 2008 WL 4093688, at *4 (S.D. Tex. Aug. 28, 2008) (citing 3 Eric Mills Holmes, HOLMES'S APPLEMAN ON INSURANCE § 11.2 (1998)) (internal quotation marks omitted). Indeed, certificates of insurance are "issued for informational purposes, in particular, for advising [a] third party of the existence and amount of insurance that

---

[4] For purposes of this motion only, the court assumes without deciding that Workover is a potential third-party beneficiary entitled to invoke protection under the Special Endorsement.

[5] To the extent that the COI purports to be a contract, both sides agree that the issue is governed by maritime law. (Premier's Opp. Memo., pgs. 3-4 [doc. # 97] and Workover's Suppl. Memo., pg. 12 n.20 [doc. # 100]). It is manifest that
> [m]aritime contracts containing indemnity provisions are to be interpreted consistently with their plain meaning unless those provisions are ambiguous. A contract is not ambiguous if its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation. Where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together.

*Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 F. App'x 278, 282 (5th Cir. 2008) (internal quotation marks and citations omitted).
Furthermore,
> [a] contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee.

*Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).
In other words, indemnity agreements are to be strictly construed. *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986).

has been issued to the named insured, since the named insured's contractual relationship with the third party requires that the named insured have a particular amount and type of insurance." *Udeobong, supra* (citing 1 Allan D. Windt, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES & INSUREDS § 6:37A (5th ed.2007)); *see also* 33 Couch on Ins. § 40:31 (certificate of insurance cannot contradict the terms of a policy but instead only provides information as to the contents of the policy).

The foregoing notwithstanding, Workover contends that the subject COI went beyond mere proof of underlying insurance coverage when it incorporated the Special Endorsement from Premier's underlying Hull & Machinery Protection and Indemnity Policy. Workover reasons that because the Special Endorsement not only a) adds Caillou Island (and its customers) as additional insureds under the policy, but also b) affords them contractual liability for defense and indemnity, the latter obligation would be duplicative and redundant of the former unless it was intended to bind Premier. *See* COI.[6]

However, the Special Endorsement does not specify that *Premier* owes these obligations. In fact, the two succeeding paragraphs continue to discuss the insurance policies. Of course, this is precisely because the Special Endorsement is copied in full from the underlying policy and merely serves to document same. Buried in one of its loquacious memoranda, Workover posits the following rhetorical question: "Workover's additional insured status under these policies would cover Workover for any potential tort or contractual liability (including defense costs) arising out of injury to Premier's employees, invitees, etc. on Premier's vessel, so why would there be any need for a separate clause specifically delineating that the endorsement is a written

---

[6] Under general maritime law, a court should interpret, "to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous. *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015) (citation omitted).

contract providing Workover defense and indemnity"? (Workover Opp. Memo., pg. 12 [doc. # 95]). This question, however, is better directed towards the drafter of the endorsement in the underlying insurance policy because the COI merely recited it. Stated differently, the drafter of the endorsement in the insurance policy believed that it was necessary to include these dual obligations to protect Caillou Island under the *policy*. Even Workover does not have the chutzpah to argue that the *policy* endorsement's dual (and purportedly redundant) obligations must be construed to oblige the insured, Premier, to defend and indemnify Caillou Island.[7]

In any event, in answer to Workover's question, and as anticipated by the special endorsement's second paragraph, additional insured status under a policy is not always co-extensive with the coverage provided to named insured and may be subject to other exceptions. *See e.g., Northfield Ins. Co. v. Lexington Ins. Co.*, Civ. Action No. 01-4237, 2003 WL 22138440, at *6 (S.D. Tex. Sept. 16, 2003). Furthermore, P&I policies ordinarily are not liability policies, and do not create a duty to defend. *Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011) (citations omitted). Hence, the need for the endorsement's additional assurance(s).

Furthermore, Workover's attempt to morph the COI into a contract obliging Premier to defend and indemnify Caillou Island and its customers is at odds with the plain terms and stated purpose of the COI. The court acknowledges that labeling a document a "certificate of insurance" does not necessarily make it so. Here, however, everything in the COI is consistent

---

[7] The court also rejects Workover's argument that by accepting Apache's defense, via correspondence, counsel for Premier *and its underwriters* conceptually conceded that the COI bound Premier to provide defense and indemnity. *See* Correspondence; Workover MSJ, Exhs. G-1-5. Aside from Workover's patent failure to argue or establish any legal principle that would bar Premier's current position, it is manifest that counsel accepted Apache's defense on behalf of Premier *and its underwriters*. In other words, counsel was considering the special endorsement from the perspective of the underlying policy, which clearly binds *the underwriters* to the concomitant benefit of their insured.

with a certificate of insurance. As detailed above, the COI, explains that its purpose is "to certify that the policies of insurance described below have been issued to the named insured shown below are in full force at this time." The named insured, the covered vessels, and the respective policies are identified and listed. Moreover, the Special Endorsement from the underlying insurance policy protecting Caillou Island is recited, in its entirety. The COI comments section explains that the document is a supplement to the "Acord 25 Form," which is a standard insurance industry form published by the ACORD Corporation. *Barton v. Higgs*, 381 S.C. 367, 373, 674 S.E.2d 145, 148 n.1 (2009). Consistent with the disclaimers included in the instant COI, an Acord 25 Form merely serves as documentation of insurance. *Id*.

In sum, if the drafters of the COI intended to bind Premier to defend and indemnify Caillou Island, the document should have explicitly said so. In the absence of such explicit language, it is unreasonable to infer that Premier intended to undertake such an obligation in an instrument that, by its unequivocal terms, merely serves to confirm the existence of underlying insurance coverage that will protect Caillou Island. *See Corbitt, supra*.[8]

Further, under Louisiana law,[9] for certain purposes and circumstances, an insurance agent

---

[8] Workover suggests that this interpretation renders the COI a blank sheet of paper. (Workover Suppl. Memo., pgs. 9-10, n.15 [doc. # 100]. The court disagrees. Certificates of insurance benefit third-parties such as Caillou Island by providing evidence of coverage under the insured's policy(ies).

[9] State law governs the relationship between the insurer and the maritime insured. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Energy Ins. Agency, Inc.*, 659 F. Supp. 97, 98 (S.D. Tex. 1987) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955)); *see also Lien Ho Hsing Steel Enter. Co. v. Weihtag*, 738 F.2d 1455, 1458 (9th Cir. 1984) (law of the state with the greatest interest controls issue of marine insurance agency relationships). Workover and Premier do not urge application of the law of any state other than Louisiana.

or broker such as Marsh, USA, Inc. ("Marsh") may be deemed an agent of the insured, i.e., Premier. *Tiner v. Aetna Life Ins. Co.*, 291 So.2d 774, 778 (La.1974) (whether a broker in any particular transaction acts as the agent of the insured or of the insurer, is a question of fact dependent on the particular circumstances of the case). Here, however, Workover has adduced no evidence to support a finding that Marsh was authorized to commit its alleged principal, Premier, to defend and indemnify Caillou Island.

Under Louisiana law, "[a]n agency relationship cannot be presumed; it must be clearly established. The party asserting the relationship has the burden of establishing the existence of an agency relationship." *Fleet Fin., Inc. v. Loan Arranger, Inc.*, 604 So. 2d 656, 658 (La. App. 1st Cir. 1992) (citations omitted). Furthermore, "[a]n agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct." *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987) (citation omitted). An agent's implied authority "is actual authority, which, while not expressed in the agency agreement, is inferred from the circumstances, purposes, and nature of the agency itself. An agent is vested with the implied authority to do all of those things necessary or incidental to the agency assignment." *Broadway v. All-Star Ins. Corp.*, 285 So. 2d 536, 538 (La. 1973).

Here, Workover has not adduced any evidence of Marsh's express authority conferred via its presumed mandate with Premier. *See* La. Civ. Code Art. 2989. Moreover, in *Broadway, supra*, the Louisiana Supreme Court determined that an insurance agent/broker did not have implied authority to cancel a policy of insurance. *Broadway, supra*. *A fortiori*, even assuming that Premier granted Marsh authority to procure marine insurance on its behalf, this mandate does not give rise to implied authority to obligate Premier to defend and indemnify a third-party. Furthermore, Workover has not adduced any evidence to show that Premier held Marsh out as

having authority to promise defense and indemnity on Premier's behalf.[10]  To the extent that Caillou Island may have believed that Marsh had such authority[11] the impression was unreasonable, unwarranted, and unavailing.

.

## Conclusion

For the foregoing reasons, the court finds that there is no genuine dispute as to any material fact, and that Premier is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  Accordingly,

IT IS RECOMMENDED that the motion for summary judgment [doc. # 84] filed by Workover Specialties, LLC be DENIED.

IT IS FURTHER RECOMMENDED that the motion for partial summary judgment [doc. 82] filed by cross-claim defendant Premier Tugs, LLC be GRANTED, dismissing with prejudice Workover Specialties, LLC's cross-claim against Premier Tugs, LLC, at Workover's cost.  Fed.R.Civ.P. 56.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections

---

[10] "Apparent authority exists when the principal acts in such a way that a third person is justified in assuming that the agent has authority to act for the principal, even though the principal may not have granted the authority to the agent." *Martin Fuel Distributors, Inc. v. Trans Gulf Fuel, Inc.*, 496 So. 2d 473, 476 (La. App. 1st Cir. 1986).  The party seeking to bind the principal has the burden of proving apparent authority. *Barrilleaux v. Franklin Found. Hosp.*, 683 So. 2d 348, 354 (La. App. 1 Cir. 1996).  Regardless, "[a] third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits **the proposed act** by the agent." *Id*. (citations omitted) (emphasis added).

[11] *See* Unsworn Decl. of Billy Cenac, President of Caillou Island; Workover MSJ, Exh. F [doc. # 84].

within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 22nd day of October 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE